Date Signed:
June 5, 2014

SO ORDERED.



Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re DAVID HUNG CHUNG CHU and SU CHING FONG CHU, <br><br> Debtor. | Case No. 12-00986 <br> Chapter 7 |
| ELIZABETH A. KANE, <br><br> Plaintiff, <br><br> vs. <br><br> ALAN TIN-LO CHU and ERIC T. CHU, et al., <br><br> Defendants. | Adv. Pro. No. 12-90091 <br><br><br><br><br><br><br><br> Re: Docket No. 28 |

## MEMORANDUM OF DECISION ON
## MOTIONS FOR SUMMARY JUDGMENT

The trustee seeks partial summary judgment avoiding certain alleged fraudulent transfers. The debtors seek partial summary judgment in their favor on the same claims.

I.   JURISDICTION

The bankruptcy court has personal and subject matter jurisdiction. The bankruptcy court has statutory authority to enter a final judgment and the defendants have consented to final adjudication by the bankruptcy court.

II.  FACTS

A.   The Kahuku Property Transfer

In 2001, Ms. Chu bought a property in Kahuku for $600,000.[1] About three months before the debtors filed for chapter 7 bankruptcy, Ms. Chu transferred the property to her sons, Alan and Eric Chu.[2] Alan and Eric paid $5,000 in cash and assumed a $400,000 liability Ms. Chu allegedly owed to co-defendant Shu-Yuan Pai.[3] (Ms. Pai is an old friend of Ms. Chu.[4] The trustee challenges the legitimacy of this debt, claiming that there is no record that Ms. Chu made any payments to Ms. Pai.) After the transfer, Alan's company, A.E. International LLC (AE), apparently acting as manager of the property, entered into leases with the tenants of the Kahuku

---

[1] Dkt. 29-1 at 31, 38.

[2] *Id.* at 40.

[3] *Id.* at 48.

[4] Case No. 13-90056, dkt. 22, at 5. I am taking judicial notice that Ms. Chu gave this declaration testimony in a related adversary proceeding involving many of the same parties under Fed. R. Evid. 201(b)(2).

2

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed 06/05/14   Page 2 of 15

property.[5]

After the debtors filed for bankruptcy, the trustee demanded that the sons return the property. They complied,[6] and the trustee later sold the property for $710,000.[7]

Before the trustee obtained the property, the defendants collected at least $82,000 in gross rents from the Kahuku property.[8] The parties dispute the net amount of the rents after expenses.

## 2. The Pearl and Coral Transfer

Ms. Chu owns 64 percent of the stock of Pearl and Coral, Ltd. (P&C).[9] According to Ms. Chu's sworn bankruptcy schedules, P&C owed her a liquidated debt of $892,997.[10] Ms. Chu now claims that may have been were capital contributions which P&C was not obligated to repay.[11]

About one week before the debtors filed for bankruptcy, Ms. Chu caused P&C to transfer most of its assets to Chu Pacific LLC, a company which her son owned

---

[5] Dkt. 29-2 – 29-5.

[6] Dkt. 29-1 at 53.

[7] Case No. 12-00986, Dkt. 111.

[8] Dkt. 29-2 – 29-5, 29-7 at 2.

[9] Case No. 12-00986, Dkt. 17, at 5.

[10] *Id.*

[11] Dkt. 42 at 43-44.

3

U.S. Bankruptcy Court - Hawaii  #12-90091  Dkt # 49  Filed 06/05/14  Page 3 of 15

and of which she was the manager.[12] Under the agreement, Chu Pacific assumed most of P&C's liabilities, but not any amount P&C owed to Ms. Chu.[13] In addition, Chu Pacific agreed to pay in cash an amount equal to the security deposit held by P&C's landlord and prorated rent.[14]

The total amount of liabilities Chu Pacific assumed was $1,553,116.57.[15] The parties disagree about the value of P&C's assets. According to the parties' agreement, the total value of the assets P&C sold was about $1,300,000,[16] but Ms. Chu now says the assets were worth $500,000 at best.[17]

**B.    Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[18] Summary judgment should be granted against a party "'who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

[12] Dkt. 29-1 at 1-8, 27, 29.

[13] *Id.* at 2-3, 8.

[14] *Id.* at 2.

[15] *Id.* at 8.

[16] *Id.* at 7.

[17] Dkt 42 at 42.

[18] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

4

U.S. Bankruptcy Court - Hawaii    #12-90091    Dkt # 49    Filed 06/05/14    Page 4 of 15

that party will bear the burden of proof at trial.'"[19]

## III. DISCUSSION

For the reasons stated below, I will grant the trustee's motion and the defendants' countermotion in part.

### 1. Kahuku Transfer

#### a. *Alleged Settlement*

The defendants argue that, when they returned the property to the trustee, all claims related to the property were settled. The trustee correctly argues that there was no express settlement agreement,[20] no basis to imply a settlement agreement, and no court approval of any settlement agreement. In short, there was no enforceable settlement agreement.

#### b. *Actual Fraud*

Under section 548(a)(1)(A) of the Bankruptcy Code, the trustee has the power to avoid "any transfer . . . of an interest of the debtor in property" that the debtor made "with actual intent to hinder, delay, or defraud any entity to which the debtor was . . . indebted."[21] State law provides the same rule in slightly different language: a

---

[19] *Huey v. Honeywell, Inc.*, 82 F.3d 327, 334 (9th Cir. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[20] Dkt. 42 at 47.

[21] 11 U.S.C. § 548(a)(1)(A).

5

transfer is fraudulent if the debtor made it "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."[22] Therefore, the trustee must prove that Ms. Chu or Mr. Chu transferred property with the intent to hinder, delay, or defraud the creditors.

There is no doubt that Ms. Chu owned the Kahuku property and transferred it to her sons.

The trustee cites a mass of circumstantial evidence that she made the transfer with the requisite fraudulent intent. Her financial condition was poor: her business was doing badly,[23] a large judgment had been entered against her, and very soon after the transfer she filed her bankruptcy petition. She transferred the property to close relatives, her sons. She has admitted that she intended to benefit Ms. Pai, a person with whom she had a long-standing business relationship and an even older friendship.[24] She has also acknowledged her maternal desire to benefit her sons.[25] She received no significant cash consideration for the sale. At about the same time, she caused her company, P&C, to transfer substantially all of its assets, for almost no

---

[22] 11 U.S.C. § 548(a)(1)(A); *see also* Haw. Rev. Stat. § 651C-4(a)(1).

[23] Dkt. 42 at 42.

[24] *Id.* at 44.

[25] *Id.* at 41.

6

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed 06/05/14   Page 6 of 15

cash consideration, to a company which she managed and her sons owned.[26] This testimony and consistent pattern of conduct strongly suggests an intention to keep assets out of the hands of some of her creditors.

On the other side, Ms. Chu testifies that she did not intend to defraud her creditors, but rather wanted to make sure that one creditor got paid.[27] An intent to prefer one creditor over others is not necessarily the same as an intent to hinder, delay, or defraud creditors.[28] Ms. Chu's testimony is barely sufficient to defeat summary judgment.

    *c.    Constructive Fraud*

Section 548(a)(1)(B) of the Bankruptcy Code permits the trustee to avoid transfers of the debtor's property if the debtor 1) "received less than a reasonably equivalent value in exchange for such transfer" and 2) was insolvent when the transfer was made or became insolvent as a result of the transfer.[29] State law includes an almost identical provision.[30]

There is no dispute that Ms. Chu made a transfer of her property and that Ms.

---

[26] Dkt. 42 at 41-44; dkt. 29-1, at 29.

[27] Dkt. 42, at 43.

[28] *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 307 (11th Cir. 1994); 6 Collier on Bankruptcy ¶ 727.02[3][c] (16th ed. 2014).

[29] 11 U.S.C. § 548(a)(1)(B).

[30] Haw. Rev. Stat. § 651C-5(a).

7

Chu was insolvent when she made the transfer.

The trustee argues that Ms. Chu's sons did not give "value" in exchange for the transfer. Under federal law:

> "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor . . . .[31]

State law is slightly different (the key difference is underscored):

> Value is given for a transfer or an obligation if in exchange for the transfer or obligation property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise <u>made otherwise than in the ordinary course of the promisor's business</u> to furnish support to the debtor or another person.[32]

Most of the consideration given by the sons was their agreement to pay a debt to Ms. Pai, Ms. Chu's old friend. The trustee argues that an unsecured promise to pay money is not "value." I disagree.

The question of whether the debtor got value is separate from the question of whether that value was reasonably equivalent to the transferred assets. To decide whether the debtor got value, "a court must consider whether, based on the circumstances that existed at the time of the transfer, it was legitimate and reasonable to expect some value accruing to the debtor. . . . [I]n those cases where the plaintiff

---

[31] 11 U.S.C.A. § 548(d)(2)(A).

[32] Haw. Rev. Stat. § 651C-3(a) (emphasis added).

8

U.S. Bankruptcy Court - Hawaii    #12-90091    Dkt # 49    Filed  06/05/14    Page 8 of 15

contends that a transfer resulted in no value to the debtor, the plaintiff must ordinarily prove that the calculated value of the benefit is zero."[33] There is no evidence that sons' promise to pay Ms. Chu's debt to Ms. Pai was worthless; to the contrary, the sons testify that part of the assumed debt has been paid.[34]

The trustee's argument relies on the fact that the definition of "value" excludes promises to provide support. The exception does not apply because the sons did not promise to provide "support" to anyone. The trustee reads the exception to include all unsecured promises to pay money. That is not, however, consistent with the language of the statute or the cases interpreting it.

Therefore, Ms. Chu got "value" in exchange for the Kahuku property.

This leaves the question whether the sons' promise was "reasonably equivalent" value. "Reasonable equivalence does not require exact equality in value, but means 'approximately equivalent' or 'roughly equivalent.'"[35] The total amount which the sons paid and promised was $405,000. The trustee was able to sell the

---

[33] *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212-14 (3d Cir. 2006). *See also In re R.M.L., Inc.*, 92 F.3d 139, 152 (3d Cir. 1996) ("[S]o long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred."); *Dobieco, Inc., v. Brown (In re Brown)*, 265 B.R. 167 (Bankr. E.D. Ark. 2001) (assumption of obligation to pay rent is "value" given in exchange for assignment of lease).

[34] Dkt. 38 at 8-9.

[35] *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009).

9

property within a year for $710,000. The value discrepancy is too great to meet the test of reasonable equivalence.

Therefore, the trustee is entitled to summary judgment determining that Ms. Chu's transfer of the Kahuku property to her sons was fraudulent under section 548(a)(1)(B) of the Bankruptcy Code and Haw. Rev. Stat. § 651C-5(a).

### d. *Recovery of Rents*

Because the sons have already returned the Kahuku property to the trustee, the question is whether the trustee is also entitled to recover the rents they collected while the Kahuku property was in their hands.

Neither the trustee nor the defendants have cited any authority on the question whether the recipient of a fraudulent transfer must return, not only the property (or its value), but also any income the property generated. The statutes permit the trustee to recover "the property transferred or, if the court so orders, the value of such property . . . ."[36] It is not clear that this phrase includes rental income earned while the transferees held the property.[37] Although there is a sizable body of authority holding that a fraudulent transferee may be liable for rents under certain

---

[36] 11 U.S.C. § 550(a); *see also* Haw. Rev. Stat. § 651C-7.

[37] Haw. Rev. Stat. § 651C-7(a)(3)(C) (the court may grant "any other relief the circumstances may require") might also support the trustee's position, but no party has analyzed it.

10

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed  06/05/14   Page 10 of 15

circumstances,[38] the parties have not cited these cases or discussed whether this rule applies under section 548 or Hawaii's Uniform Fraudulent Transfer Act and, if so, whether such recovery is warranted under the circumstances of this case.

The trustee also argues that she is entitled to recover the rents on an unjust enrichment theory. I will defer ruling on this theory until the parties provide more facts and law. The trustee has cited the general standard for unjust enrichment but has cited no cases with facts like these. Further, the outcome of the trustee's claim to the rents on a fraudulent transfer theory might bear on the trustee's unjust enrichment claim: if the trustee can recover rents on a fraudulent theory, the unjust enrichment theory would be surplusage, and if fraudulent transfer law precludes recovery of the rent, I might not grant the same recovery on an unjust enrichment theory.

Assuming that the trustee is entitled to recover the rents, there are factual disputes concerning the amount of the rents earned. The trustee claims that the defendants may have collected more rents than they have disclosed[39] and there are factual disputes about the amount of expenses which the defendants should be

---

[38] H.H. Henry, Annot., *Accountability and Liability for Rents and Profits of Grantee of Fraudulently Conveyed Real Property*, 60 A.L.R.2d 593 (1958).

[39] Dkt. 28 at 22.

11

allowed to charge against the gross rent collections.[40] The record does not establish the net rental income which the defendants actually received with enough certainty to support summary judgment.

### 2. Pearl and Coral Transfer

#### a. *Trustee as Creditor of P&C*

The trustee asserts that the bankruptcy estate is a creditor of P&C that can employ state law to attack the transfer of P&C's assets as fraudulent.[41] The trustee points out that Ms. Chu's sworn bankruptcy schedules show that P&C owed her $892,997, and that this is consistent with P&C's financial statements and tax returns. According to Ms. Chu's testimony, the court could infer that her transfers were capital contributions and not loans.[42] I may or may not believe Ms. Chu's testimony at trial (her current version of events contradicts her prior sworn statement in a way that conveniently suits her current interests), but it is enough to defeat a motion for summary judgment.

#### b. *Actual Fraud*

Assuming that the trustee can establish that the estate is a creditor of P&C, the next question is whether the trustee has established P&C's fraudulent intent. For the

---

[40] Dkt. 42 at 13-14.

[41] *See* 11 U.S.C. § 544(b).

[42] Dkt. 42, at 43.

12

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed  06/05/14   Page 12 of 15

reasons given above, there is a genuine question of fact on this point.

    c.  *Constructive Fraud*

Under applicable state law, the trustee must establish that P&C did not receive reasonably equivalent value in exchange for its assets and was insolvent at the time of the transfer or was made insolvent by the transfer.[43]

For the reasons stated above, Chu Pacific's assumption of some of P&C's debts is "value." Unresolved questions of fact about the value of P&C's assets preclude summary judgment on the question whether that value was "reasonably equivalent" to the value of the transferred assets.

Ms. Chu has admitted that P&C was insolvent when it made the transfer.[44]

    d.  *Liability of Alan Chu, Eric Chu, and AE*

Ms. Chu's sons argue that they and their company, AE, are not personally liable to the trustee in respect of the P&C transfer. They argue that AE had no role at all in that transaction and that the sons are protected by the "veil" of Chu Pacific LLC.[45]

The trustee argues that the sons were involved in the transactions and that they

---

[43] Haw. Rev. Stat. § 651C-5(a).

[44] Case No. 13-90056, dkt. 22 at 3.

[45] Haw. Rev. Stat. § 428-303; *Adwalls Media, LLC v. Adwalls LLC*, 2013 U.S. Dist. LEXIS 117759, *10 (D. Hawaii August 10, 2013) (unreported).

13

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed  06/05/14   Page 13 of 15

probably knew of their mother's fraudulent intent and helped her carry it out.

The sons and AE are not "transferees" of the P&C assets. Hawaii law gives the court the power to enter a judgment against transferees or "the person for whose benefit the transfer was made . . . ."[46] Chu Pacific is the transferee.[47] The trustee has not established–legally or factually–that the court should pierce Chu Pacific's veil and hold the either Eric or Alan personally responsible. Similarly, the trustee has not established that the fraudulent transfer statutes authorize recovery against the members of a transferee limited liability company in the absence of proof that the veil should be pierced. Further, the trustee cites no authority for an "aiding and abetting" type of claim relating to fraudulent transfers. The sons and AE are entitled to partial summary judgment on this point.

## IV. CONCLUSION

The trustee is entitled to partial summary judgment determining that (1) the trustee's claims are not barred by any settlement, (2) Ms. Chu's transfer of the Kahuku property to her sons was fraudulent under section 548(a)(1)(B) of the Bankruptcy Code and Haw. Rev. Stat. § 651C-5(a), and (3) P&C was insolvent when it transferred assets to Chu Pacific LLC.

---

[46] Haw. Rev. Stat. § 651C-8(b)(1).

[47] While § 651C-8(b)(1) might allow the trustee to hold Eric and Alan Chu personally liable, the trustee has not shown that they are "person[s] for whose benefit [the] transfer was made" under Hawaii's Uniform Fraudulent Transfer Act.

14

U.S. Bankruptcy Court - Hawaii   #12-90091   Dkt # 49   Filed  06/05/14   Page 14 of 15

The defendants are entitled to partial summary judgment determining (1) that Alan Chu, Eric Chu, and A.E. International LLC are not liable to the trustee in connection with the transfer of the P&C assets and (2) Chu Pacific is not liable on the Kahuku Transfer.

On all other issues, both motions are denied.

## END OF DECISION